IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs at Knoxville July 26, 2016

BRIAN GAULDIN v. STATE OF TENNESSEE

Appeal from the Circuit Court for Dyer County
No. II-CR-167     R. Lee Moore, Jr., Judge

No. W2016-00607-CCA-R3-PC  -  Filed November 7, 2016

The Petitioner, Brian Gauldin, appeals from the denial of post-conviction relief by the Circuit Court for Dyer County.  He was convicted of the sale of .5 grams or more of cocaine in a drug free zone and the sale of cocaine under .5 grams in a drug free zone and received an effective sentence of twenty years' incarceration.  On appeal, the Petitioner argues that he received ineffective assistance of counsel based on trial counsel's failure to (1) present current photos of the location where the drug sales occurred to demonstrate that it was a "vacant lot" rather than a city park; (2) present an expert witness to rebut the State's explanation of a change in drug amounts listed in its reports between his first and second trials; (3) advise him that he would be sentenced as a Range III, Persistent Offender; and (4) challenge the racial composition of the jury.  Upon review, we affirm the judgment of the post-conviction court.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Danny H. Goodman, Jr., Tiptonville, Tennessee, for the Petitioner, Brian Gauldin.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Lance E. Webb, Assistant District Attorney General, for the Appellee, State of Tennessee.

OPINION

On December 21 and 22, 2010, the Petitioner sold drugs to a confidential informant.  State v. Brian Gauldin, No. W2013-02226-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App. Aug. 22, 2014), perm. app. denied (Tenn. Dec. 18, 2014).  Each controlled drug sale occurred within 1000 feet of Scott Street Park, a registered city park in Dyer

County, Tennessee. The substances purchased during the transactions were tested and found to be .55 grams of cocaine and .39 grams of cocaine. Brian Gauldin, slip op. at 1-2. The Petitioner was subsequently indicted by the Dyer County Grand Jury for two counts of the sale of less than .5 grams of cocaine in a drug free zone (counts one and four), one count of the sale of a schedule III controlled substance in a drug free zone (count two), and one count of the sale of .5 grams or more of cocaine in a drug free zone (count three). On May 30, 2012, a jury was unable to reach a verdict, and the trial court declared a mistrial. On July 2, 2013, the State chose to nolle prosequi counts one and two of the indictment. On July 3, 2013, a jury convicted the Petitioner as charged of the sale of .5 grams or more of cocaine in a drug free zone (count three) and the sale of cocaine under .5 grams in a drug free zone (count four). As a Range III, Persistent Offender, the Petitioner received an effective sentence of twenty years' incarceration. Id., slip op. at 1. This court affirmed the Petitioner's convictions on direct appeal.

On August 13, 2015, the Petitioner filed a petition for post-conviction relief, alleging multiple grounds of relief based on ineffective assistance of counsel. The Petitioner was appointed counsel who filed an amended petition on the Petitioner's behalf.

At the November 9, 2015 post-conviction hearing, the Petitioner testified that trial counsel represented him at his first trial, which resulted in a hung jury, his second trial and sentencing, and on direct appeal. The Petitioner stated that trial counsel did not thoroughly investigate the "issue dealing with Scott Street Park. [Trial counsel] allowed the State to show a picture of swing sets, barbecue grills, [and] a picture that was ten years ago [sic]." The Petitioner had lived "right across the street from the area" and claimed that it had been "an empty lot for about ten years." He believed that trial counsel should have obtained current photos of the area and presented them to the jury. The Petitioner said that he attempted to talk with trial counsel about the issue, but he could not recall trial counsel's response. Had there been current photos of the park presented at his trial, the Petitioner believed that he would have received "a little leniency."

The Petitioner also believed that trial counsel should have investigated the difference between the amount of the drugs listed in the Tennessee Bureau of Investigation (TBI) reports in his first and second trial. The Petitioner did not understand why the listed weight of the drugs changed between his trials. The Petitioner believed the reports showed him to have "more drugs than what [he] was convicted of[.]" Four laboratory reports were admitted into evidence at the hearing. The first set of reports, both issued on February 15, 2011, listed drug amounts of 0.4 grams and 0.5 grams. The first set of reports was used during the Petitioner's first trial. The second set of reports, issued January 12, 2012 and March 28, 2012, listed drug amounts of 0.39 grams and 0.55 grams, respectively. The second set of reports was used in the Petitioner's second trial.

-2-

Each set of reports analyzed the same drugs recovered from the offense. Asked if a witness from the TBI explained the difference in the reports at his trial, the Petitioner replied, "Nah, they didn't explain no difference . . . I would have known 55 grams is something you can't conceal in your hand." He attempted to explain his concern to trial counsel, but said that trial counsel did not understand him. The Petitioner believed an expert witness should have testified on his behalf to rebut the alleged disparity in the reports.

In regard to sentencing, the Petitioner agreed that he had five prior convictions including three aggravated robberies, possession of contraband in a penal institution, and sale of .5 grams of cocaine. However, he believed that his three prior aggravated robbery convictions would be counted as one conviction because they were all committed on the same day, October 30, 1995. The Petitioner denied discussing his sentence range with trial counsel. Had he known that he would be sentenced as a Range III, Persistent Offender, the Petitioner would have pleaded guilty rather than proceed to trial.

The Petitioner could not recall the entire composition of the jury panel at his trial. He remembered "seeing maybe two [African American jurors] that lived in the Scott Street Park area where they would understand what [he was] saying about this being used as a park." He was concerned because the African American jurors did not "make it up into the jury box," but trial counsel told him that "he could talk to a whiter jury better or he could manipulate them a little better."

On cross-examination, the Petitioner could not recall exhibits of photos taken of the park which were entered into evidence at his trial or a witness confirming that the photos were taken in May of 2012 and accurately depicted how the park looked at that time. The Petitioner also recalled the testimony of a TBI agent who testified during his second trial and explained the difference in the reports. He agreed that she said during the process of testing some of the drugs can be "used up," which explains why, upon retesting, a sample weight can be reduced from .4 grams to .39 grams. She further stated that between the Petitioner's first and second trials, the TBI changed its reporting policy to require the number in the hundredths column after the decimal to be shown in their reports. The Petitioner also denied receiving a November 1, 2011 letter from his prior counsel advising him of his sentence range for each offense if he went to trial. The letter was hand delivered and specifically noted that, upon conviction for count three, the Petitioner would be classified as a Range III, Persistent Offender with a sentence range of twenty to thirty years, with the first twenty years to be served day for day.

Trial counsel, a veteran criminal defense attorney who had been licensed to practice for over forty years, testified that he began to represent the Petitioner after the Petitioner's prior counsel filed "a motion for – to declare whether or not [the Petitioner]

-3-

was a Range II or Range III Offender." Prior counsel filed a motion to withdraw following his interaction with the Petitioner at this hearing, and trial counsel was appointed. Trial counsel did not recall the outcome of the hearing, but requested permission from the court to investigate the sentence classification issue further. Counsel familiarized himself with the Petitioner's case, including his indictment, his prior convictions, the 24-hour rule, and the exceptions to it. Because the Petitioner's prior aggravated robbery offenses included the element of violence, counsel determined that they would be exceptions to the 24-hour rule and count as separate offenses. Regardless, counsel presented his arguments to the contrary to the trial court as well, which were subsequently denied. Counsel said he told the Petitioner he would be sentenced as a Range III, Persistent Offender before his first trial and again before the second trial. The trial judge also explained the Petitioner's sentence range and exposure prior to each trial in this case. Counsel received prior counsel's November 11 letter outlining the Petitioner's sentence classification and range and provided the Petitioner with a copy on three separate occasions.

Prior to the Petitioner's second trial, trial counsel received a six-year offer from the State, which was rejected by the Petitioner. A letter from the Petitioner to counsel was admitted into evidence noting that the Petitioner had rejected the State's six-year offer twice and the Petitioner's belief that the State could not locate its witness for trial. Counsel advised the Petitioner to accept the offer "way more than once." Counsel thought it "made no s[ense] whatsoever in this world . . . for [the Petitioner] to go to trial" because the Petitioner had already served two years.

In regard to the drug amounts listed in the TBI reports, trial counsel said the TBI agent explained the difference. Counsel understood that "the first lab reports would have been rounded off. The second were taken out another decimal." Counsel could not recall the racial composition of the jury, but he said that the Petitioner did not apprise him of any problems he had with the jury. Counsel further explained his practice of providing his clients with a legal pad to note any issues with the jury and consulting with his client before picking the jury. Counsel said he followed this practice with the Petitioner, and the Petitioner did not object to any of the jurors. Finally, counsel noted that he personally drove past the Scott Street Park every day and observed people utilizing it. Trial counsel also contacted "the City Recorder or someone at City Hall" and confirmed that Scott Street Park was registered as a city park. Trial counsel concluded that there was nothing he could do to refute the State's argument that Scott Street Park was a city park. He also testified that, to his knowledge, the photographs that the State presented at trial were accurate representations of the park.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In its November 13, 2015 Memorandum Opinion and Order, the post-

conviction court determined that the Petitioner failed to show deficient performance by trial counsel and that, even if there was deficient performance, "there [was] no evidence of prejudice." It is from this order that the Petitioner timely appeals.

## ANALYSIS

The Petitioner argues that he received ineffective assistance of counsel based on trial counsel's failure to (1) present current photos of the location where the drug sales occurred to demonstrate that it was a "vacant lot" rather than a city park; (2) present an expert witness to rebut the State's explanation of a change in drug amounts listed in its reports between his first and second trials; (3) advise him that he would be sentenced as a Range III, Persistent Offender; and (4) challenge the racial composition of the jury. The State responds that the post-conviction court properly denied relief because the Petitioner failed to establish that he received ineffective assistance of counsel. Upon review, we agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). See Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient

performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Goad, 938 S.W.2d at 370 (quoting Strickland, 466 U.S. at 694). Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Id. at 370 (citing Strickland, 466 U.S. at 697).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner argues that trial counsel failed to introduce current photographs of Scott Street Park to rebut the State's proof that the park was in fact a city park rather than a vacant, empty lot. The post-conviction court determined, and we agree, that "there was ample proof in the record that the [drug sale] took place near the Scott Street Park, which is a city park . . . and is a drug free zone." Trial counsel contacted "the City Recorder or

someone at City Hall" and confirmed that Scott Street Park was registered as a city park. The post-conviction court found that there was nothing further trial counsel could have done "to indicate that it was not a drug free zone." Upon our review, the record does not preponderate against the findings of the post-conviction court. Moreover, the Petitioner did not present any evidence to dispute the fact that Scott Street Park was a city park at the post-conviction hearing. The Petitioner is not entitled to relief on this issue.

The Petitioner next argues that trial counsel was ineffective in failing to present an expert witness to rebut the State's expert witness regarding the difference in the amount of drugs in the first and second set of TBI reports. The record shows that the TBI witness provided an adequate explanation for the difference. Moreover, trial counsel testified that he did not believe an expert was necessary because the explanation provided was reasonable. Finally, the Petitioner presented no additional witnesses during his post-conviction hearing to establish that such a witness would have made a difference at his trial. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Having failed to establish deficient performance, the Petitioner is not entitled to relief.

The Petitioner also argues that trial counsel was ineffective in failing to advise him that he would be sentenced as a Range III, Persistent Offender. Had he known he would be sentenced as a Range III, Persistent Offender, the Petitioner claims that he would have pled guilty rather than proceed to trial. Here, the record shows that trial counsel told the Petitioner on numerous occasions that he would be sentenced as a Range III, Persistent Offender. Prior to each of his two trials, trial counsel and the trial court discussed the Petitioner's sentence range with him. A hand delivered letter addressed to the Petitioner from the Petitioner's prior trial counsel outlining his sentence classification and sentence range for each conviction was admitted at the hearing. It specifically explained the Petitioner's status as a Range III, Persistent Offender if he was convicted of count three at trial. Trial counsel discussed this letter in detail with the Petitioner and provided him with copies of the letter throughout his representation of the Petitioner. Although the Petitioner claims to have never received this letter or discussed this letter with trial counsel, the post-conviction court determined that this claim was "simply not believable."

In addition, prior counsel had a hearing before the court regarding this issue. Trial counsel researched the issue extensively and presented his arguments to the trial court, which subsequently determined that the Petitioner was in fact a Range III, Persistent Offender. The Petitioner was advised of his status by the trial court and counsel prior to each trial. Moreover, the Petitioner's letter noting that he rejected the State's six-year offer twice belies his claim that he would have pled guilty had he known his status as a Range III, Persistent Offender. The letter clearly shows that the Petitioner was insistent on a trial because he believed the State was unable to locate its witness for trial. The

record amply supports the determination of the post-conviction court. Accordingly, the Petitioner is not entitled to relief.

The Petitioner lastly asserts that trial counsel was ineffective because he failed to object to the racial composition of the jury. Specifically, the Petitioner contends that he did not have a "fair representation of his community" on his jury and that the lack of African American jurors affected the outcome of his trial. The State argues that the Petitioner has waived this issue because he failed to cite to the record and failed to cite legal authority to support his argument. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). While we agree that the Petitioner's brief is woefully lacking in compliance with Rule 10, we will nonetheless address this issue on the merits.

In support of this claim, the Petitioner summarily concludes in his brief that he has established "a prima facie violation of the fair-cross-section requirement" announced in Duren v. Missouri, 439 U.S. 357, 364 (1979). In Duren v. Missouri, the Supreme Court established a three-part test for jury challenges. See Berghuis v. Smith, 559 U.S. 314, 332 (2010) (reaffirming Duren). To establish a prima facie case for violation of the fair cross-section requirement under the Sixth Amendment, "a defendant must prove that: (1) a group qualifying as 'distinctive' (2) is not fairly and reasonably represented in jury venires, and (3) 'systematic exclusion' in the jury selection process accounts for the underrepresentation." Berghuis, 559 U.S. at 327 (citing Duren, 439 U.S. at 364). "Distinctive groups" under the Sixth Amendment are those that "are sufficiently numerous and distinct . . . so that if they are systematically excluded from jury venires, the Sixth Amendment fair-cross-section requirement cannot be satisfied." Duren, 439 U.S. at 364 (quoting Taylor v. Louisiana, 419 U.S. 522, 531 (1975). Accordingly, the Petitioner has established the first prong of the Duren test because African Americans are a "distinctive" group in his community. See e.g. United States v. Rioux, 97 F.3d 648, 654 (2d Cir. 1996) ("Blacks and Hispanics are unquestionably 'distinctive' groups for the purposes of a fair-cross-section analysis."); See United States v. Jackman, 46 F.3d 1240 (2d Cir. 1995).

The Petitioner has failed to establish the remaining two prongs of the Duren test. Courts have relied on a variety of methods in determining whether a distinctive group has been unfairly represented in juries and thus causing their systemic exclusion. See Berghuis, 559 U.S. at 329 (while no single method or test is required to measure the representation of distinctive groups in jury pools absolute disparity, comparative disparity, and standard deviation are commonly used by courts). On this record, however, the Petitioner did not argue or present any proof that African Americans were unfairly underrepresented in his county or that such underrepresentation resulted in their

systematic exclusion. There was no data from the court clerk explaining how jurors were selected, no census reports to compare the population of African Americans in the county against the number of African Americans selected for jury service, and no statistics showing that the alleged underrepresentation caused systemic exclusion. In fact, the only proof offered in support of this issue was the Petitioner's vague recollection of two African American jurors in the jury venire who were not called to be seated for the final jury. Bare assertions and conclusory allegations are insufficient to establish relief. The post-conviction court determined, and we agree, that the Petitioner has failed to establish deficient performance or prejudice in regard to this issue.

## CONCLUSION

Based on the foregoing authorities and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE